Filed 9/12/25  Sahni v. Sahni CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RITU SAHNI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MOHIT SAHNI,<br><br>    Defendant and Appellant. | A170846<br><br>(Alameda County<br>Super. Ct. No. HF23140713) |

In this marital dissolution action between Ritu Sahni (Mother) and Mohit Sahni (Father), Father has filed this appeal challenging a temporary child support order of the trial court issued at a hearing in April 2024.  He claims the court abused its discretion by refusing to deviate from guideline child support despite evidence of a significantly lower cost of living in India where Mother and the parties' daughter reside.  He further argues the court erred by failing to consider evidence of Mother's undisclosed interest income in calculating guideline child support.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

We limit our recitation of facts to those relevant to the issues on appeal.

In April 2023, Mother petitioned for dissolution of marriage from Father.  The parties have two minor children.  Their son lives with Father in the United States, while their daughter lives with Mother in India.

1

On January 24, 2024, Mother filed a request for order (RFO) for child support, attorney fees, sanctions, and other orders. In her supporting income and expense declaration, Mother indicated she was not employed and had earned no wages or taxable income in the prior 12 months. She disclosed no investment income (i.e., dividends/interest, rental property income, trust income), and in the section on assets (i.e., savings and other deposit accounts), Mother wrote "TBD." Regarding her expenses, Mother stated "[a]ctual" monthly expenses in India of $2,415 and "[p]roposed needs" in the amount of $3,751 a month.

Father filed an income and expense declaration, indicating monthly pretax income of $23,814 plus an average monthly commission or bonus of $37,157. In his declaration, Father requested "deviation from guideline support" on the grounds that Mother and daughter were living in India, where the cost of living "is 10% of cost of living in U.S."

Mother submitted a DissoMaster[1] statement, calculating guideline child support at $5,149 per month for daughter. In his own DissoMaster calculation, Father asked, among other things, that the trial court "[d]eviate for child support" to $3,331.

In advance of the RFO hearing, Mother filed reply papers disclosing substantial funds in several savings and deposit accounts, with interest rates ranging from 5.3 to 7.1 percent.

At a February 21, 2024 hearing on Mother's RFO ("February 21 hearing"), the trial court denied Father's request to deviate from guideline child support and ordered him to pay Mother $3,539 per month in child

---

[1] "The DissoMaster is one of two privately developed computer programs used to calculate guideline child support as required by [Family Code] section 4055, which involves, literally, an algebraic formula." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 524, fn. 2.)

support, "retroactive to January 24, 2024"—the date Mother filed the RFO. The court indicated it would "continue to reserve jurisdiction over the issue of child support back to the date of filing which is January 24th of this year" in order to "give both parties an opportunity to do whatever additional discovery they want to do" and "[m]ake whatever additional arguments they want to on the next court date." Additionally, the court granted Mother's request for need-based attorney fees and costs based on its finding of a disparity between the parties in access to funds to retain or maintain counsel. The court continued the matter for "further review of Child Support and Attorney Fees and Cost."

At the continued hearing on April 25, 2024 ("April 25 hearing"), the trial court ruled it would not grant Mother's request to make child support retroactive to April 14, 2023—the date she filed the initial dissolution petition. Regarding Mother's request to modify the amount of child support, the court heard arguments regarding Father's restricted stock unit (RSU) income and ordered that a three-year average of Father's bonuses and RSU income be used to calculate child support. In total, Father was ordered to pay $5,754 in child support per month, commencing May 1, 2024, and child support arrearages in the amount of $10,691.29 by August 2, 2024.

On June 24, 2024, Father filed a notice of appeal.

## DISCUSSION

### A. Appealability

We first address Mother's argument that Father attempts to appeal from an unappealable order. "The appealability of the judgment or order is jurisdictional and an attempt to appeal from a nonappealable judgment or order will ordinarily be dismissed." (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297.)

3

In his notice of appeal, Father checked a box generally indicating that the appeal was taken from an order or judgment under Code of Civil Procedure section 904.1, subdivision (a)(3)–(13), but he left blank the spaces provided for identifying the appealed-from matter and its date of entry. (See Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal must "identif[y] the particular judgment or order being appealed"]; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47 [notice of appeal inadequate if it completely omits reference to appealed-from judgment].) Mother argues that Father appears to be attempting to appeal from the minute order of the April 25 hearing, which she maintains is not appealable. (See *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1091 [where formal order is required, minute order is not appealable].)

We observe, however, that Father's opening brief refers to "a child support order issued by the [trial court] on 08-05-2024," and that Mother acknowledges a formal written order memorializing the trial court's temporary child support ruling was filed on August 5, 2024. Importantly, Mother does not claim to have been prejudiced by any ambiguity in Father's notice of appeal. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 75–76 [courts must liberally construe notice of appeal so as to protect right of appeal if appealed-from matter is reasonably clear and respondent was not misled or prejudiced].) Although the August 5 order was not initially included in the record on appeal, we have, on our own motion, augmented the record to include it. (Cal. Rules of Court rule 8.155(a)(1)(a).) On the augmented record, we may liberally construe the prematurely filed notice of appeal to embrace a challenge to the temporary child support ruling memorialized in the August 5, 2024 order of the trial court. (See Cal. Rules of Court, rule 8.104, subd. (d)(2).)

4

Mother next contends the trial court's child support ruling is not appealable because it is an interlocutory, nonfinal order. Relying on *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627 (*Gruen*), Mother argues the court's ruling was not dispositive on the issue of child support because the court continued the matter for a review hearing in June 2024. We are not persuaded.

*Gruen* pointedly held that a temporary, or pendente lite, support order "is operative from the time of pronouncement, and it is directly appealable. [Citation.] 'When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken.' " (*Gruen, supra*, 191 Cal.App.4th at pp. 637–638.) Unlike permanent support, pendente lite support " 'is usually obtained soon after the filing of the petition and before any final determination on the various issues in the dissolution,' " and its distinct " 'purpose is to maintain the living conditions and standards of the parties [and their children] as closely as possible to the status quo, pending trial and the division of the assets and obligations of the parties.' [Citation.] A temporary order is intended to allow the supported spouse and children to live in their ' "accustomed manner' " ' pending the ultimate disposition of the action. [Citation.] 'The order is based on need and is not an adjudication of any of the issues in the litigation.' " (*Gruen*, at p. 637.)

In short, *Gruen* holds that a temporary child support order is appealable because it directs the payment of money in order to temporarily maintain status quo living conditions for children during marital dissolution proceedings, an issue that is collateral to the main issues in the case. (*Gruen, supra*, 191 Cal.App.4th at pp. 637–638; see also *In re Marriage of Skelley*

5

(1976) 18 Cal.3d 365, 367–369 [temporary spousal support orders directly appealable]; cf. *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1072, fn. 12 [indicating a temporary spousal support order was partially nonappealable where court "left open the possibility" of amending the award based on a reconsideration of spouse's income].)

*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303 (*Williamson*) does not assist Mother because that decision did not address appealability but instead held the lower court erred by retroactively modifying a "final" pendente lite support order without having specifically reserved jurisdiction to do so. (*Williamson* at pp. 1317–1318.) Though the trial court here appears to have carried forward its prior ruling that it would reserve jurisdiction on whether "to retroactively modify child support back to the date of 01/24/2024," the court did not indicate a similar intent or inclination to revisit the monthly *amount* of temporary child support. Nor did the court's scheduling of future hearings on Mother's RFO reflect that the court reserved jurisdiction to modify or reconsider the monthly amount of temporary child support. Without more, we apply the general rule that the temporary support order is directly appealable. (*Gruen*, *supra*, 191 Cal.App.4th at pp. 638–639.)

### B. Deviation from Guideline Child Support

Father contends the trial court abused its discretion by refusing to deviate from guideline child support, which does not "account for the significantly lower cost of raising a child in India." In Father's view, "[a]pplying the guidelines without considering this crucial factor results in an inflated child support order that is unjust and unreasonable." We do not agree.

6

A child support order is reviewed for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282 (*Cheriton*).) Under this standard of review, we determine "whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion." (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1360 (*de Guigne*).) "An abuse of discretion is only demonstrated when no reasonable judge could have made the challenged order." (*In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 374 (*Barth*).)

" 'California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. [Citation.] "The guideline seeks to place the interests of children as the state's top priority." [Citation.] In setting guideline support, the courts are required to adhere to certain principles, including these: "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." [Citation.] "Each parent should pay for the support of the children according to his or her ability." [Citation.] "Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." ' " (*Barth, supra,* 210 Cal.App.4th at pp. 371–372.)

Guideline child support is calculated by applying a mathematical formula to the relative incomes of the parents, and it "is presumed to be the correct amount of child support to be ordered." (Fam. Code, §§ 4055, 4057, subd. (a)[2]; *de Guigne, supra,* 97 Cal.App.4th at p. 1359.) The party seeking a deviation from the guidelines bears the burden of establishing through

_____

[2]     Further unspecified statutory references are to the Family Code.

admissible evidence that application of the formula would be "unjust or inappropriate" in a given case. (§ 4057, subd. (b); *County of Stanislaus v. Gibbs* (1997) 59 Cal.App.4th 1417, 1424.) The circumstances justifying a departure from the guidelines are set forth in section 4057, subdivision (b) and must be established by a preponderance of the evidence. (§ 4057, subd. (b)(1)–(6).)

Here, Father relies solely on the so-called "high earner" provision of section 4057, subdivision (b)(3), which applies when "[t]he parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." Critically, however, Father fails to demonstrate, let alone argue, that his income is "extraordinarily high" within the meaning of section 4057, subdivision (b)(3). The Legislature did not define "extraordinarily high income," leaving the determination to the discretion of the trial court (*Cheriton, supra*, 92 Cal.App.4th at p. 297), but it remains an essential element nonetheless. (See, e.g., *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 519 [high earner's annual income was $2.6 million]; *In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 182 [high earner admitted annual earned income was at least $1.75 million pre-tax dollars]; *In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 126 (*Chandler*) [high earning spouse had gross monthly income of $117,000].) As such, the trial court could reasonably have denied Father's request for deviation due to his failure to address an essential element of the statute.

Moreover, even assuming for the sake of argument that Father's income met the "extraordinarily high" threshold, the trial court could still have reasonably denied Father's request for deviation. Given the state of the record, the court could reasonably have determined Father failed to

demonstrate through admissible evidence that application of the guidelines would be unjust or inappropriate (§ 4057, subd. (b)) or that a "lower award would be consistent with the child's best interests" (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1328). Specifically, Father supported his claim of a significant cost of living disparity between India and the United States with a citation to a document in which he asserted that "[o]ne US dollar equals 83 Indian rupees," and that the "[c]ost of living for anyone in Bathinda is substantially different than living in Fremont, CA." Though Father signed this document, he did not disclose the place of signing or attest that the matters stated therein were true under penalty of perjury under the laws of the State of California. (Code Civ. Proc., § 2015.5.) Thus, Father's unsworn assertions did not furnish admissible evidence capable of supporting his burden to rebut the presumption of guideline correctness. (§ 4057, subd. (b).)

Father additionally argues that Mother's own income and expense declaration "established that the child's needs could be adequately met with a significantly lower amount of support than calculated under the California guidelines." Specifically, Father points to Mother's claim of "[a]ctual" monthly expenses in the amount of $2,415 while living in India. However, Mother maintained she had "been living very cheaply and very minimally" in India while awaiting a determination of community property assets. Thus, the court could reasonably have concluded that Mother's statement of actual expenses did not necessarily reflect an apples-to-apples comparison of the costs of living between India and the United States. On this record, we conclude it was not outside the bounds of reason for the trial court to conclude that Father did not submit sufficient evidence of a significant cost of

9

living difference between India and the United States that would render the award of guideline child support unjust or inappropriate.

It also bears emphasizing that "any deviation from the guidelines must be consistent with the principles in section 4053, which designates interests of the children as a top priority and provides that parents should support their children at a level commensurate with their ability." (*de Guigne*, *supra*, 97 Cal.App.4th at p. 1361.) Children are entitled to "share in the standard of living of both parents," and "[c]hild support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." (§ 4053, subd. (f).) "[C]ourts have consistently recognized that 'where the supporting parent enjoys a lifestyle that far exceeds that of the custodial parent, child support must to some degree reflect the more opulent lifestyle even though this may, as a practical matter, produce a benefit for the custodial parent.' " (*In re Marriage of Hubner* (1988) 205 Cal.App.3d 660, 668.) "What constitutes reasonable needs for a child varies with the circumstances of the parties. [Citations.] But the duty to support a child covers more than the mere necessities of life if the parent can afford to pay more." (*Chandler*, *supra*, 60 Cal.App.4th at p. 129.)

Accordingly, even accepting that the court-ordered amount of temporary child support exceeded daughter's minimum expenses in India, we see no abuse of discretion in the trial court's determination that it was in daughter's best interest to receive guideline child support so she could continue to share in the standard of living of both parents and enjoy an improved standard of living in the custodial household. (§ 4053, subds. (a), (b), (d)–(f); see *Barth*, *supra*, 210 Cal.App.4th at p. 375 [no abuse of discretion where trial court found that even if significant cost of living difference existed

10

between Ohio and California, "it was acceptable for child support to 'over-satisf[y]' a child's minimum needs"].)

**C. Interest Income**

Father contends the trial court's temporary child support order was excessive because the court "failed to consider" Mother's undisclosed interest income in calculating child support–namely, the $2,500 to $3,000 in monthly interest income that Father claims she was earning on funds he had given her when she moved to India. We conclude Father forfeited this argument.

As the record discloses, Father claimed to have given Mother substantial funds at the time she moved to India. Though some portion of these funds apparently was earning interest in an account, Mother did not initially disclose any interest-bearing accounts in her income and expense declaration; nor did she include any interest income in her proposed DissoMaster report. She did, however, indicate in her income and expense declaration that information about her savings and other deposit accounts was "TBD"—or "to be determined." A week prior to the February 21 hearing, Mother submitted reply papers that included detailed information on several accounts, including the balances and interest rates for each account.

Despite these pre-hearing disclosures, Father made no mention of the interest income issue at the February 21 hearing. At the continued hearing on April 25, 2024, Father raised the interest income issue for the first time, but only to contest Mother's entitlement to need-based attorney fees under section 2030, claiming he "paid her $640,000 when she moved to India as part of our agreement, verbal agreement. . . . [¶] And so she has all those resources. And—and I think the money that she has, she is earning at least 7-percent interest. So my guess is she is earning somewhere between 2500 to $3,000 monthly interest on that money that she has, which is all in cash.

11

That is my belief. . . . [S]he has most of the resources to keep her cash to basically come to this Court and pay for her fees." Mother acknowledged she had received substantial funds from Father, but she maintained she had fully "disclosed her assets in both the initial Request for Order and in the reply" and "attached the history statements for the accounts that she has in India." Mother's counsel further told the court that "[o]f the initial $600,000 that my client had, she only has 40,012 remaining."[3]

As the above reflects, Father raised the issue of Mother's interest income as grounds for denying her request for need-based attorney fees, not to dispute her calculation of guideline child support. Father did not specifically argue—at either hearing on February 21 or April 25— that the amount of temporary child support should be adjusted to account for Mother's interest income. Indeed, notwithstanding Mother's pre-hearing disclosure of detailed information regarding the balances and interest rates on several accounts, Father did not update his proposed DissoMaster report or otherwise alert the court to incorporate the interest information when the court ran its own DissoMaster report at the February 21 hearing. At the subsequent April 25 hearing, Father again lodged no objection to the missing interest information reflected in the court's DissoMaster report.

" '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' . . . Such arguments raised for the first time on appeal are generally deemed forfeited." (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592.) " 'This rule is based on fairness—it would be

---

[3]     This appears to be either a misstatement by counsel or a typographical error in the reporter's transcript, as Mother stated in her reply declaration that she had "approximately $412,000 in assets remaining from what [Father] gave to me when I moved."

12

unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " (*American Indian Health & Services Corp. v. Kent* (2018) 24 Cal.App.5th 772, 789.) This is especially true where the new theory on appeal depends on undecided factual questions, as distinguished from pure questions of law on an uncontroverted record. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.) Here, fairness dictates that Father cannot raise his new theory for the first time on appeal, as the record indicates that Father had adequate notice and information about Mother's interest-bearing accounts a sufficient time prior to the February 21 and April 25 hearings to present this factual issue to the trial court. His failure to do so constituted a forfeiture of the issue, and we decline to address it for the first time on appeal.

## DISPOSITION

The temporary child support order is affirmed. Mother is entitled to her costs on appeal.

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Petrou, J.


*Sahni v. Sahni* (A170846)


13